**Affirmed and Memorandum Opinion filed July 7, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00465-CR

## WADE EUGENE DIX, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1380494**

## MEMORANDUM OPINION

Appellant raises two issues in this appeal from a judgment adjudicating guilt: (1) whether the evidence is sufficient to support the trial court's judgment; and (2) whether collateral estoppel bars the State from relitigating certain fact questions that were asserted in a previous motion to adjudicate. We conclude that the record contains sufficient evidence to support a new factual allegation that had not been asserted in the previous motion to adjudicate. Without addressing the issue of collateral estoppel, we affirm the trial court's judgment.

# BACKGROUND

Appellant pleaded guilty in March of 2013 to a single count of aggravated assault with a deadly weapon. The trial court deferred an adjudication of guilt and placed appellant on a four-year period of community supervision. One condition of community supervision required that appellant avoid contact with the complainant, his across-the-street neighbor.

In August of 2013, the State filed its first motion to adjudicate guilt. The State alleged that appellant violated the no-contact order on July 27, 2013, by verbally threatening the complainant and by gesturing with his hand in the shape of a gun. The State also alleged that appellant violated other terms of his community supervision by failing to abstain from cocaine and by failing to participate in a mental health treatment program.

In October of 2013, the State moved to dismiss its motion to adjudicate. The trial court granted the motion to dismiss, but the court ordered that appellant spend sixty days in jail as "therapy." The court credited appellant with time already served and kept appellant on community supervision.

In April of 2014, the State filed its second motion to adjudicate guilt, which contained the very same allegations that had previously been alleged in the first motion to adjudicate. The State also brought forth several new allegations. In addition to the incident that allegedly occurred on July 27, 2013, the State alleged that appellant violated the no-contact order on four separate dates. Those dates were July 28, 2013; October 28, 2013; January 1, 2014; and March 30, 2014. The State further alleged that appellant violated the terms of his community supervision by failing to pay certain fees and fines.

2

Appellant pleaded not true to each of the allegations. After a full evidentiary hearing, the trial court found that three of the no-contact violations were true. Those were the violations allegedly occurring on July 27, 2013; July 28, 2013; and March 30, 2014. The court also found as true the allegations that appellant had failed to abstain from cocaine and had failed to participate in a mental health treatment program. The court determined that each of the remaining allegations was not true.

Based on the findings of true, the trial court rendered a judgment of guilt and assessed punishment at four years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

During an adjudication proceeding, the State has the burden of proving by a preponderance of the evidence that the defendant violated a condition of his community supervision. *See Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). This burden is satisfied when the evidence creates a belief, more probable than not, that a condition of community supervision has been violated as alleged. *See Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006).

The State's burden of proof informs our standard of review when considering issues regarding the sufficiency of the evidence. *See Hacker*, 389 S.W.3d at 895. When the burden of proof is "beyond a reasonable doubt," an appellate court reviews the evidence in the light most favorable to the judgment, asking whether the trier of fact could have made the requisite finding beyond a reasonable doubt. *Id.* For issues governed by the less rigorous burden of proof of "preponderance of the evidence," the standard of review is simply whether the trial court abused its discretion. *See* Tex. Code Crim. Proc. art. 42.12, § 5(b); *Hacker*, 389 S.W.3d at 865.

## ANALYSIS

To avoid any question of collateral estoppel,[1] our analysis will focus on the trial court's finding that appellant violated the no-contact order on July 28, 2013, a violation that was alleged for the first time in the second motion to adjudicate. *See* Tex. R. App. P. 47.1 (providing that a court of appeals must hand down a written opinion that is "as brief as practicable"). We will address just this one finding because proof of a single violation is sufficient to support the trial court's decision. *See Black v. State*, 411 S.W.3d 25, 28 (Tex. App.—Houston [14th Dist.] 2013, no pet.). To fully explain the events behind this alleged no-contact violation, we also discuss some additional facts regarding the day before.

The complainant testified that he was painting his house on July 27, 2013, when he heard appellant dragging a shovel across the street and towards the complainant's direction. The complainant ran away, fearing for his life because he believed that appellant was brandishing a gun under his shirt. According to the complainant, appellant threatened that he was going to take care of the complainant "once and for all." The complainant called the police, who responded to the scene, but the police did not arrest appellant for violating the no-contact order because the police could not verify that a no-contact order was in place.

The complainant testified that he began taking cell phone videos of his encounters with appellant to protect himself from additional harassment. An exhibit containing six separate videos was admitted into evidence during the hearing on the motion to adjudicate. The complainant described one of the videos as being taken on an unspecified date in July of 2013.

---

[1] In his second issue, appellant argued that he was punished with sixty days in jail for the violations alleged in the first motion to adjudicate, and that collateral estoppel would prevent a second punishment for the very same acts. The State argued that there was no adjudication of the first motion, only a dismissal.

4

In that video, which was filmed from a location in the complainant's front yard, appellant can be seen standing in his own front yard with two women. Appellant never crosses the street, but he addresses the complainant from his property. According to the complainant, appellant also makes direct eye contact. The video shows appellant asking the complainant, "If you're so afraid of me, why would you be in my face with a video camera?" The complainant never answers.

Appellant continues, "Yeah, keep on recording. Like I told you, it's real, man. I know some people." One of the women walks in front of appellant and tries to tell him to stop talking. Addressing the woman, appellant protests that the complainant has tried to send him "back to the pen[itentiary] three more times." Appellant then leans around the woman and tells the complainant that he should get in touch with another neighbor down the street, who has a reputation for calling the courthouse downtown. Appellant also refers to the complainant as a "fake ass cracka."

The complainant testified that he filmed this video approximately ten minutes after a phone conversation with the district attorney. The complainant did not provide an exact date for this phone conversation, but he explained that the conversation happened after a recent act of harassment, the details of which were not described. The complainant testified, without objection, that the district attorney had told him, "We can't do anything. We need some evidence. You know, maybe get some video of it."

The video clearly shows that appellant contacted the complainant, in violation of a condition of community supervision. Appellant contends, however, that the evidence is legally insufficient to adjudicate guilt because there is no evidence that the contact occurred on July 28, 2013, the date alleged in the motion to adjudicate. Appellant argues further that the State must be held to proving that

contact occurred on this specific date because the motion to adjudicate does not contain "on or about" language with respect to any of the alleged violations.

We conclude that the trial court did not abuse its discretion. The complainant testified that he filmed the video in July of 2013. The complainant was unable to specify the exact date of filming, but the month and year matched the allegation in the State's motion to adjudicate. The complainant also testified that the video was made shortly after a phone conversation with the district attorney. The evidence showed that the complainant had contacted the district attorney because of a recent act of harassment, and the trial court could have reasonably determined that the complainant was referring to the events on July 27, 2013. The complainant would have had a reason to call the district attorney shortly after those events because appellant verbally threatened the complainant but the police did not arrest him. Appellant's statement on the video that the complainant tried to send him back to the penitentiary lends additional support that the video followed the incident on July 27, 2013. Altogether, the circumstantial evidence supports a finding that the complainant reached out to the district attorney on July 28, 2013, and that appellant violated the no-contact order that same day.

Even if we assumed that this circumstantial evidence did not support the trial court's finding of the date alleged, we would still conclude that the variance between the motion to adjudicate and the proof adduced at trial did not violate the minimum requirements of due process. The defendant in a revocation or adjudication proceeding is not afforded the full range of constitutional and statutory protections available at a criminal trial. *See Moore v. State*, 11 S.W.3d 495, 499 (Tex. App.—Houston [14th Dist.] 2000, no pet.). That is because the defendant's guilt is not at issue; the trial court is not concerned with determining the defendant's original criminal culpability. *Id.* Instead, the question is whether

the defendant broke the contract he made with the court after the determination of guilt. *Id.*

This is not to say that all constitutional guarantees of due process "fly out the window." *See Ruedas v. State*, 586 S.W.2d 520, 523 (Tex. Crim. App. [Panel Op.] 1979). The defendant is entitled to a written motion that fully informs him of the alleged violation of a term of community supervision. *See Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. [Panel Op.] 1980). But the motion itself does not have to meet the particularities of an indictment, information, or complaint. *See Champion v. State*, 590 S.W.2d 495, 497 (Tex. Crim. App. [Panel Op.] 1979); *Spruill v. State*, 382 S.W.3d 518, 521–22 (Tex. App.—Austin 2012, no pet.). All that is required is that the motion clearly set forth the basis on which the State seeks to revoke community supervision or adjudicate guilt so that the defendant receives fair notice and may prepare a defense. *See Labelle v. State*, 720 S.W.2d 101, 108 (Tex. Crim. App. 1986).

A "variance" occurs when there is a discrepancy in the allegations of a charging instrument and the evidence adduced at trial. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Only a material, or "fatal," variance requires the reversal of a judgment. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002). A variance is immaterial if it is not prejudicial to a defendant's substantial rights. *See Gollihar*, 46 S.W.3d at 247–48.

The variance doctrine applies equally to revocations of community supervision and adjudication proceedings. *See, e.g.*, *Hammack v. State*, No. 06-14-00175-CR, — S.W.3d —, 2015 WL 1869497, at *4–5 (Tex. App.—Texarkana Apr. 24, 2015, no pet.); *Moore*, 11 S.W.3d at 499–500. When deciding whether a defendant's substantial rights have been prejudiced, we generally consider two questions: (1) whether the charging instrument (or, in this case, the motion to

adjudicate) informed the defendant of the charge against him or sufficiently allowed him to prepare an adequate defense at trial, and (2) whether prosecution under the deficiently drafted charging instrument (or motion) would subject the defendant to the risk of being charged again for the same conduct. *See Gollihar*, 46 S.W.3d at 248. The defendant bears the burden of demonstrating surprise or prejudice. *See Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

The motion in this case alleged that appellant violated the no-contact order on two occasions in July of 2013. Appellant did not attempt to prove during the hearing that he had an alibi for either of those alleged violations. Instead, appellant's defensive strategy was to challenge the complainant's reputation for truthfulness and to establish that the complainant acted as the aggressor by initiating some of the contacts.

There is no indication that the motion to adjudicate prevented appellant from preparing an adequate defense. Appellant did not argue in the trial court that he was surprised or prejudiced by the allegation that one of the contacts allegedly occurred on July 28, 2013. Nor has he made any such argument on appeal.

The State was required to prove by a preponderance of the evidence that appellant violated the no-contact order, which was a condition of his community supervision. The State was further required to show that the alleged violation occurred during appellant's period of community supervision and before the filing of the motion to adjudicate. According to the complainant, the contact depicted in the video occurred in July of 2013, which is within the pertinent time period. We conclude that the State's failure to prove the exact date of the contact was not material, did not prejudice appellant's defense, and does not render the evidence legally insufficient. The trial court did not abuse its discretion by finding that appellant violated the no-contact order.

# CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).