# ORIGINAL

**1037-15**

September 11, 2015

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 16 2015

Abel Acosta, Clerk
FILED IN
COURT OF CRIMINAL APPEALS

SEP 18 2015

Abel Acosta, Clerk

Abel Acosta: Clerk
Court of Criminal Appeals of Texas
P.O. Box 12308 Capitol Station
Austin, Texas 78711

To The Most Honorable Court of Criminal Appeals:

RE: PD-1037-15

Appellant in the above refferenced cause, prays that the court would, Without Petition (rule 66.1) review the decision of the 14th Court of Appeals - Houston under RULE(s) 67 & 66.4

Appellant is Indigent and INCARCERATED. The Appeals and trial court have compromised the appellant's Right to counsel - a right recognized by both the Texas as well as U.S. Constitution - even the Texas Code of Criminal Procedure.

Appellant was totally violated by the trial court way before he was "COERED" to plea and put on "Probation". Documents, events of the Clerks records, and lack of Recordals Record (RR) relating to the revocation of a 30,000 bond made in this case. The D.A. in closing arguments on the record admitts the state/court

revoked the bond.

Appellant's, as well as his family (95 yr. old mother) - (58 yr. old "down syndrome" brother) life has been totally upended as on the record in this case!

Lastly, the Appellants prayer is that this court will compel the lower court to appoint him counsel - that can prepare and file a pettition that meets the appellant's approval if one is needed before the November 8, 2015 deadline.

Respectfully
Submitted

WADE E. DEO
Appellant.

May 20, 2015

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

MAY 26 2015

CHRISTOPHER A. PRINE
CLERK

Mr. Christopher A. Prine
Clerk: Houston Court of Appeals, 14th District
301 Fannin Rm. 245
Houston, Texas 77002

MAILED
5/21/15

RE: 14-14-00465-CR          Wade Dix
    Wade Eugene Dix          #00313459  6C2
    State vs of Texas        1200 Baker
                             Houston, Tx 77002

Mr. Prine:

Please consider this correspondence an affirmative attempt to preserve and protect Issues I feel were not included in the Statement of Facts of the above reffereneced appeal. Attorney Keisha Smith - my attorney, has had no contact with me since the one time when she was appointed to my case.

The trial court, totally violated me in this matter - they coered a plea from me - they also accussed me of violating a no contact provision of my bond - jailed me - Never brought me before the court and charged me with contemp nor violation of the order. Attorney Smith did not include these claims and Issues in my Appeal.

It is my respectfull request that the court (the 14th) take notice of these claims and Issues - so that they may be preserved and protected going forward.

I, in closing respectfull request a status on my case — and Any projection of decision. Thank you for your time a Attention the these requests.

Wade B. Dix
#00313459
1200 Baker
Houston, Texas 77002

P.S. May I file the enclosed motions

Cause No. 1380494

The State Of Texas                                    In The  337th

    vs.                                                   Judicial District Court

Wade E. Dix                                           Harris  County, Texas

## Motion To Dismiss Court Appointed Attorney
## And Appoint New Counsel To Act On Behalf Of Defendant

To The Honorable Judge Of Said Court:

COMES NOW, Wade Eugene Dix, defendant, in the above entitled and numbered cause, and moves the Court for an order to Dismiss the defendant's court Appointed Counsel of record and appoint a new Counsel to act on behalf of the Defendant, and in support of this motion the Defendant show that:

### I

The Defendant is presently represented in this cause by Keisha L. Smith, whom the Court appointed some nine months previous to the date of the filing of this motion.

### II

That the aforesaid attorney has failed, and is continuing to fail, to provide Defendant with the reasonably effective assistance of Counsel that he is entitled to, in that:

(A) Counsel has had no contact with Defendant in the past months.

(B) Counsel has taken no affirmative action to preserve and protect valuable rights of the Defendant.

(c) Defendant by way of and because of these actions has no faith and confidence in aforesaid.

### III

Defendant is not able to work with and place his trust in the aforesaid attorney.

### IV

The Court should appoint a new Counsel to act in behalf of the Defendant in order that he/she is assured the reasonably effective assistance of Counsel that he/she is entitled to.

Affirmed and Memorandum Opinion filed July 7, 2015.



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00465-CR

---

### WADE EUGENE DIX, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1380494**

---

## MEMORANDUM OPINION

Appellant raises two issues in this appeal from a judgment adjudicating guilt: (1) whether the evidence is sufficient to support the trial court's judgment; and (2) whether collateral estoppel bars the State from relitigating certain fact questions that were asserted in a previous motion to adjudicate. We conclude that the record contains sufficient evidence to support a new factual allegation that had not been asserted in the previous motion to adjudicate. Without addressing the issue of collateral estoppel, we affirm the trial court's judgment.

## BACKGROUND

Appellant pleaded guilty in March of 2013 to a single count of aggravated assault with a deadly weapon. The trial court deferred an adjudication of guilt and placed appellant on a four-year period of community supervision. One condition of community supervision required that appellant avoid contact with the complainant, his across-the-street neighbor.

In August of 2013, the State filed its first motion to adjudicate guilt. The State alleged that appellant violated the no-contact order on July 27, 2013, by verbally threatening the complainant and by gesturing with his hand in the shape of a gun. The State also alleged that appellant violated other terms of his community supervision by failing to abstain from cocaine and by failing to participate in a mental health treatment program.

In October of 2013, the State moved to dismiss its motion to adjudicate. The trial court granted the motion to dismiss, but the court ordered that appellant spend sixty days in jail as "therapy." The court credited appellant with time already served and kept appellant on community supervision.

In April of 2014, the State filed its second motion to adjudicate guilt, which contained the very same allegations that had previously been alleged in the first motion to adjudicate. The State also brought forth several new allegations. In addition to the incident that allegedly occurred on July 27, 2013, the State alleged that appellant violated the no-contact order on four separate dates. Those dates were July 28, 2013; October 28, 2013; January 1, 2014; and March 30, 2014. The State further alleged that appellant violated the terms of his community supervision by failing to pay certain fees and fines.

Appellant pleaded not true to each of the allegations. After a full evidentiary hearing, the trial court found that three of the no-contact violations were true. Those were the violations allegedly occurring on July 27, 2013; July 28, 2013; and March 30, 2014. The court also found as true the allegations that appellant had failed to abstain from cocaine and had failed to participate in a mental health treatment program. The court determined that each of the remaining allegations was not true.

Based on the findings of true, the trial court rendered a judgment of guilt and assessed punishment at four years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

During an adjudication proceeding, the State has the burden of proving by a preponderance of the evidence that the defendant violated a condition of his community supervision. *See Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). This burden is satisfied when the evidence creates a belief, more probable than not, that a condition of community supervision has been violated as alleged. *See Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006).

The State's burden of proof informs our standard of review when considering issues regarding the sufficiency of the evidence. *See Hacker*, 389 S.W.3d at 895. When the burden of proof is "beyond a reasonable doubt," an appellate court reviews the evidence in the light most favorable to the judgment, asking whether the trier of fact could have made the requisite finding beyond a reasonable doubt. *Id.* For issues governed by the less rigorous burden of proof of "preponderance of the evidence," the standard of review is simply whether the trial court abused its discretion. *See* Tex. Code Crim. Proc. art. 42.12, § 5(b); *Hacker*, 389 S.W.3d at 865.

## ANALYSIS

To avoid any question of collateral estoppel,[1] our analysis will focus on the trial court's finding that appellant violated the no-contact order on July 28, 2013, a violation that was alleged for the first time in the second motion to adjudicate. *See* Tex. R. App. P. 47.1 (providing that a court of appeals must hand down a written opinion that is "as brief as practicable"). We will address just this one finding because proof of a single violation is sufficient to support the trial court's decision. *See Black v. State*, 411 S.W.3d 25, 28 (Tex. App.—Houston [14th Dist.] 2013, no pet.). To fully explain the events behind this alleged no-contact violation, we also discuss some additional facts regarding the day before.

The complainant testified that he was painting his house on July 27, 2013, when he heard appellant dragging a shovel across the street and towards the complainant's direction. The complainant ran away, fearing for his life because he believed that appellant was brandishing a gun under his shirt. According to the complainant, appellant threatened that he was going to take care of the complainant "once and for all." The complainant called the police, who responded to the scene, but the police did not arrest appellant for violating the no-contact order because the police could not verify that a no-contact order was in place.

The complainant testified that he began taking cell phone videos of his encounters with appellant to protect himself from additional harassment. An exhibit containing six separate videos was admitted into evidence during the hearing on the motion to adjudicate. The complainant described one of the videos as being taken on an unspecified date in July of 2013.

---

[1] In his second issue, appellant argued that he was punished with sixty days in jail for the violations alleged in the first motion to adjudicate, and that collateral estoppel would prevent a second punishment for the very same acts. The State argued that there was no adjudication of the first motion, only a dismissal.

In that video, which was filmed from a location in the complainant's front yard, appellant can be seen standing in his own front yard with two women. Appellant never crosses the street, but he addresses the complainant from his property. According to the complainant, appellant also makes direct eye contact. The video shows appellant asking the complainant, "If you're so afraid of me, why would you be in my face with a video camera?" The complainant never answers.

Appellant continues, "Yeah, keep on recording. Like I told you, it's real, man. I know some people." One of the women walks in front of appellant and tries to tell him to stop talking. Addressing the woman, appellant protests that the complainant has tried to send him "back to the pen[itentiary] three more times." Appellant then leans around the woman and tells the complainant that he should get in touch with another neighbor down the street, who has a reputation for calling the courthouse downtown. Appellant also refers to the complainant as a "fake ass cracka."

The complainant testified that he filmed this video approximately ten minutes after a phone conversation with the district attorney. The complainant did not provide an exact date for this phone conversation, but he explained that the conversation happened after a recent act of harassment, the details of which were not described. The complainant testified, without objection, that the district attorney had told him, "We can't do anything. We need some evidence. You know, maybe get some video of it."

The video clearly shows that appellant contacted the complainant, in violation of a condition of community supervision. Appellant contends, however, that the evidence is legally insufficient to adjudicate guilt because there is no evidence that the contact occurred on July 28, 2013, the date alleged in the motion to adjudicate. Appellant argues further that the State must be held to proving that

contact occurred on this specific date because the motion to adjudicate does not contain "on or about" language with respect to any of the alleged violations.

We conclude that the trial court did not abuse its discretion. The complainant testified that he filmed the video in July of 2013. The complainant was unable to specify the exact date of filming, but the month and year matched the allegation in the State's motion to adjudicate. The complainant also testified that the video was made shortly after a phone conversation with the district attorney. The evidence showed that the complainant had contacted the district attorney because of a recent act of harassment, and the trial court could have reasonably determined that the complainant was referring to the events on July 27, 2013. The complainant would have had a reason to call the district attorney shortly after those events because appellant verbally threatened the complainant but the police did not arrest him. Appellant's statement on the video that the complainant tried to send him back to the penitentiary lends additional support that the video followed the incident on July 27, 2013. Altogether, the circumstantial evidence supports a finding that the complainant reached out to the district attorney on July 28, 2013, and that appellant violated the no-contact order that same day.

Even if we assumed that this circumstantial evidence did not support the trial court's finding of the date alleged, we would still conclude that the variance between the motion to adjudicate and the proof adduced at trial did not violate the minimum requirements of due process. The defendant in a revocation or adjudication proceeding is not afforded the full range of constitutional and statutory protections available at a criminal trial. *See Moore v. State*, 11 S.W.3d 495, 499 (Tex. App.—Houston [14th Dist.] 2000, no pet.). That is because the defendant's guilt is not at issue; the trial court is not concerned with determining the defendant's original criminal culpability. *Id.* Instead, the question is whether

the defendant broke the contract he made with the court after the determination of guilt. *Id.*

This is not to say that all constitutional guarantees of due process "fly out the window." *See Ruedas v. State,* 586 S.W.2d 520, 523 (Tex. Crim. App. [Panel Op.] 1979). The defendant is entitled to a written motion that fully informs him of the alleged violation of a term of community supervision. *See Caddell v. State,* 605 S.W.2d 275, 277 (Tex. Crim. App. [Panel Op.] 1980). But the motion itself does not have to meet the particularities of an indictment, information, or complaint. *See Champion v. State,* 590 S.W.2d 495, 497 (Tex. Crim. App. [Panel Op.] 1979); *Spruill v. State,* 382 S.W.3d 518, 521–22 (Tex. App.—Austin 2012, no pet.). All that is required is that the motion clearly set forth the basis on which the State seeks to revoke community supervision or adjudicate guilt so that the defendant receives fair notice and may prepare a defense. *See Labelle v. State,* 720 S.W.2d 101, 108 (Tex. Crim. App. 1986).

A "variance" occurs when there is a discrepancy in the allegations of a charging instrument and the evidence adduced at trial. *See Gollihar v. State,* 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Only a material, or "fatal," variance requires the reversal of a judgment. *See Fuller v. State,* 73 S.W.3d 250, 253 (Tex. Crim. App. 2002). A variance is immaterial if it is not prejudicial to a defendant's substantial rights. *See Gollihar,* 46 S.W.3d at 247–48.

The variance doctrine applies equally to revocations of community supervision and adjudication proceedings. *See, e.g., Hammack v. State,* No. 06-14-00175-CR, — S.W.3d —, 2015 WL 1869497, at *4–5 (Tex. App.—Texarkana Apr. 24, 2015, no pet.); *Moore,* 11 S.W.3d at 499–500. When deciding whether a defendant's substantial rights have been prejudiced, we generally consider two questions: (1) whether the charging instrument (or, in this case, the motion to

7

adjudicate) informed the defendant of the charge against him or sufficiently allowed him to prepare an adequate defense at trial, and (2) whether prosecution under the deficiently drafted charging instrument (or motion) would subject the defendant to the risk of being charged again for the same conduct. *See Gollihar*, 46 S.W.3d at 248. The defendant bears the burden of demonstrating surprise or prejudice. *See Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

The motion in this case alleged that appellant violated the no-contact order on two occasions in July of 2013. Appellant did not attempt to prove during the hearing that he had an alibi for either of those alleged violations. Instead, appellant's defensive strategy was to challenge the complainant's reputation for truthfulness and to establish that the complainant acted as the aggressor by initiating some of the contacts.

There is no indication that the motion to adjudicate prevented appellant from preparing an adequate defense. Appellant did not argue in the trial court that he was surprised or prejudiced by the allegation that one of the contacts allegedly occurred on July 28, 2013. Nor has he made any such argument on appeal.

The State was required to prove by a preponderance of the evidence that appellant violated the no-contact order, which was a condition of his community supervision. The State was further required to show that the alleged violation occurred during appellant's period of community supervision and before the filing of the motion to adjudicate. According to the complainant, the contact depicted in the video occurred in July of 2013, which is within the pertinent time period. We conclude that the State's failure to prove the exact date of the contact was not material, did not prejudice appellant's defense, and does not render the evidence legally insufficient. The trial court did not abuse its discretion by finding that appellant violated the no-contact order.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).